IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3079 |
| | ) | |
| T.L. DIAMOND & CO., INC. and | ) | |
| THEODORE L. DIAMOND, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Plaintiff United States' Motion to Enter Consent Decree (d/e 4).  Plaintiff moves the Court to accept and enter as a final judgment the proposed Consent Decree that was lodged March 28, 2008.  See Complaint (d/e 1), Attachment 3, Consent Decree.  For the reasons set forth below, the Motion is allowed.

The Complaint seeks to recover response costs from Defendants T.L. Diamond & Co., Inc. (TLD) and Theodore L. Diamond (Mr. Diamond), the President of TLD for activities undertaken by the United States in response to the release and threatened release of hazardous substances from the Eagle

1

Zinc Superfund Site (the Site), which consists of an abandoned zinc smelting facility covering approximately 132 acres located in Hillsboro, Illinois. The United States is proceeding under § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, (CERCLA). 42 U.S.C. § 9607(a). Under 42 U.S.C. § 9607(a), the United States may recover response costs from potentially responsible parties (PRP), including current and former owners or operators of the facility at issue. As the Seventh Circuit has recently noted, liability under § 107(a) for PRPs is strict, joint, and several. Metropolitan Water Reclamation Dist. of Greater Chicago v. North American Galvanizing & Coatings, Inc., 473 F.3d 824, 827 (7th Cir. 2007). The Court recognized that, other than a rare case when the harm is divisible, "by invoking § 107(a), the EPA [Environmental Protection Agency] may recover its costs in full from any responsible party, regardless of that party's relative fault." Id.

TLD has been the owner of the Site from 1994 to the present, although it ceased operations in 2003. In addition to TLD, the EPA has identified three companies that manufactured zinc oxide at the Site during

2

the past ninety years as follows: Lanyon Brothers Zinc Company (1913-1919), Eagle-Picher Industries, Inc. (1919-1980), and Sherwin-Williams Company (1980-at least 1983). The record reflects that Lanyon Brothers is a defunct company. The EPA is in the process of gathering and evaluating information necessary to the decision on recommended clean-up for the Site.

The parties currently estimate the cost of cleaning up the Site to be $5.4 million. In 2005, Defendants began settlement discussions with the United States regarding their financial contribution toward the clean-up costs. Defendants indicated that TLD was interested in an "ability to pay" settlement.[1] The United States obtained verified financial information from TLD and conducted a financial analysis of TLD's ability to pay. Complaint, Attachment 2, Appendix A to Consent Decree; Declaration of Jeffrey Friedman (d/e 7). The United States entered into the proposed Consent Decree with Defendants, under which Defendants collectively agreed to pay $750,000 in reimbursement of response costs at the Site. The

---

[1] CERCLA expressly lists ability to pay as a factor to be considered in allocating responsibility among PRPs. 42 U.S.C. § 9622(e)(3)(A). Courts have expressly recognized and approved settlements based on an entity's ability to pay. See, e.g., United States v. Bay Area Battery, 895 F.Supp. 1524, 1535 (N.D. Fla. 1995).

proposed Consent Decree was lodged with this Court, and notice of the lodging was published in the Federal Register. 73 Fed. Reg. 19,893 (April 11, 2008). The notice invited written public comments for a period of thirty days. Sherwin-Williams Company timely filed comments objecting to the settlement, which have been supplied to the Court. <u>Plaintiff United States' Memorandum in Support of Motion to Enter Consent Decree (d/e 5)</u>, Ex. 10.

In assessing the proposed Consent Decree, this Court's function is to "'satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve.'" <u>United States v. Cannons Engineering Corp.</u>, 899 F.2d 79, 85 (1st Cir. 1990) (quoting H.R. Rep. No. 253, Pt. 3, 99th Cong., 1st Sess. 19 (1985) reprinted in 1986 U.S. Code Cong. & Admin. News 3038, 3042). Sherwin-Williams objects to the proposed Consent Decree, asserting that: (1) it does not account for the length of time Defendants operated the site; (2) the United States did not conduct an ability to pay analysis for Mr. Diamond personally; and (3) Sherwin-Williams was not given the opportunity to settle the matter, and it thus remains at risk of disproportionate liability relating to the Site. The United States responds that the proposed settlement is reasonable based on

amounts already paid by Defendants, TLD's ability to pay, and litigation risks associated with pursuing recovery from Mr. Diamond personally.

After weighing all of the record evidence together with the objections filed by Sherwin-Williams, the Court finds that the proposed Consent Decree is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve.  The proposed settlement resulted from arm's length negotiations, and there is no evidence of bad faith.  The settlement is substantively fair and reasonable as it relates to TLD because there is no evidence that TLD, which no longer operates any facilities, has the ability to pay more, and continued litigation would merely drain TLD's assets.  The settlement is substantively fair and reasonable as it relates to Mr. Diamond given the identified litigation risks in pursuing claims against him personally. While the United States admittedly failed to conduct a financial analysis of Mr. Diamond's personal assets, the settlement, as it relates to Mr. Diamond, does not hinge on his ability to pay.  Thus such an analysis would not be relevant.  Finally, the proposed Consent Decree furthers the purposes of CERCLA.  The settlement payments will be deposited into a special account to fund response costs at the Site, and additionally, the proposed Consent Decree secures environmental restrictive covenants on

5

the Site.

THEREFORE, Plaintiff United States' Motion to Enter Consent Decree (d/e 4) is ALLOWED.  The Clerk is directed to enter the proposed Consent Decree.  Because the Consent Decree resolves all pending claims between the parties, once the Consent Decree is entered, this case should be closed.

IT IS THEREFORE SO ORDERED.

ENTER:   September 16, 2008

    FOR THE COURT:

                        s/ Jeanne E. Scott
                        JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE